IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER SESSION, 1997

**FILED**

May 1, 1998

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9609-CC-00411** |
| | ) | |
| Appellee, | ) | |
| | ) | **GILES COUNTY** |
| **V.** | ) | |
| | ) | **HON. WILLIAM B. CAIN, JUDGE** |
| | ) | |
| **MICHAEL HARLAN BYRD,** | ) | |
| | ) | **(REVOCATION OF** |
| Appellant. | ) | **COMMUNITY CORRECTIONS)** |

## DISSENTING OPINION

I must respectfully dissent from the result reached by my colleagues in this case. Judge Wade has authored a well-written opinion, and I agree generally with his conclusions of the status of the applicable law regarding the issues discussed. However, it is my belief that the trial court's judgment should be affirmed for the reasons stated herein.

In State v. Harkins, 811 S.W.2d 79 (Tenn. 1991), our supreme court held:

> Given the similar nature of a community corrections sentence and a sentence of probation, we hold that the same principles are applicable in deciding whether a community corrections sentence revocation was proper.

Id. at 83.

Previously in the opinion, the court in Harkins set forth the principles regarding revocation of probation:

> We take note that a trial judge may revoke a sentence of probation or a suspended sentence upon a finding that the defendant has violated the conditions of his probation or suspended sentence by a preponderance of the evidence. T.C.A. § 40-35-311. The judgment of the trial court in this regard will not be disturbed on appeal unless it appears that there has been an abuse of discretion. <u>State v. Williamson</u>, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, <u>it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred</u>. <u>State v. Grear</u>, 568 S.W.2d 285, 286 (Tenn. 1978); <u>State v. Delp</u>, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

<u>Harkins</u>, 811 S.W.2d at 82 (emphasis added).

Regarding the petition's allegation that Defendant failed to report to his community corrections officer as required under the behavioral contract, the trial judge held that "[t]o some degree, that is sustained by the evidence, but not sufficiently to cause the court to revoke his Community Corrections." I understand this statement by the trial court to be that failure to report was proven by a preponderance of the evidence, but in the trial court's opinion, the transgression was not serious enough to revoke the sentence of Community Corrections.

The proof showed that Glen Smith, Defendant's Community Corrections supervision officer, unequivocally testified that Defendant failed to report to him as required on both March 19 and March 21, 1996. Mr. Smith explained that he advised his clients that he would be in his office to meet with them between 9:00 a.m. and 11:30 a.m. He did not make specific appointments within that time frame. Although he might sometimes be late arriving, the latest would be 9:25 a.m.

Gail Owens, who is employed by South Central Human Resource Agency and works in the same building with Mr. Smith, testified that she had a conversation with Defendant in the office building the following week on March 28, 1996. Defendant was informed by Ms. Owens that Mr. Smith was not yet in the office. Defendant said that he was going to file a complaint against Mr. Smith and that he (Defendant) "had better things to do than wait around for Mr. Smith."

Louise Elliot, a part-time employee for the Human Resource Agency, was called to testify by Defendant. She related how Defendant sometimes came in to meet with Mr. Smith and the officer would not be present. She could not remember specific dates, but did testify that Defendant would usually come back and see Mr. Smith if he missed him on the initial arrival. She recalled that Defendant usually came in a few minutes after 9:00 a.m. and sometimes Mr. Smith was a few minutes late arriving due to making home visits. On one occasion, she recalled the Defendant left when he was aware Mr. Smith had not arrived, and came back later after Mr. Smith had left for the day. The record indicates that Mr. Smith left that date at his usual time for leaving the office.

Greg Gilbert, a friend of Defendant, testified that he drove Defendant to the Community Corrections meeting on March 19, and that they arrived a little after 9:00 a.m. According to Gilbert, Defendant had a job interview in Ardmore at 10:00 a.m. When Defendant did not come out of the office of the Community Corrections officer in twenty (20) to thirty (30) minutes, he went inside and Mr. Smith was not present. They left for the job interview and later returned to the Community Corrections office. Defendant went inside where he was advised that Mr. Smith had already left. Gilbert further testified he was with Defendant on March 21 when they

arrived at the Community Corrections office at 9:00 a.m. Gilbert did not go inside the building, did not know if Mr. Smith was in the office that day, and did not know how long Defendant stayed at the office. Defendant did not testify at the hearing. There was no testimony in the record that would indicate that if the Defendant arrived and the officer was not present, this counted towards the reporting requirement. The record clearly indicates that it was up to each person under the supervision of Mr. Smith to make sure that he or she report directly to Mr. Smith.

To me, a review of this record supports revocation of the community corrections sentence upon a ground of "failure to report," especially in light of the unrefuted testimony that Defendant's attitude was that he "had better things to do than wait around" for his supervising officer. The majority opinion has reviewed, in isolation, each of the individually alleged grounds for revocation and the trial court's conclusion on each ground. I think that Harkins supports the proposition that our review should frame the issue in the following manner: "Defendant's community corrections sentence was revoked by the trial court following an evidentiary hearing. Is there any substantial evidence in this record to support this result?" I believe so, and would, on the basis of the facts and law discussed herein, affirm the judgment. This particular analysis renders moot the issues presented by Defendant regarding revocation of the Community Corrections sentence based upon Defendant's conversation with Mr. Cardin.

For the reasons stated in this dissenting opinion, I would affirm the judgment of the trial court.

_____

THOMAS T. WOODALL, Judge